## HERITAGE SQUARE, LLC *v.* JOHN EOANOU
### (AC 19561)

Schaller, Zarella and O'Connell, Js.

Argued September 19, 2000—officially released January 9, 2001

*Harry Hirsch*, for the appellant (defendant).

*Christopher Lagano*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant, John Eoanou, appeals from the judgment of the trial court rendered in favor

of the plaintiff, Heritage Square, LLC, on its claim that the defendant breached a commercial lease by failing to pay rent. The defendant claims that the court improperly determined (1) that the defendant was not constructively evicted, (2) that the defendant was required to pay the plaintiff rent from the time the defendant vacated the premises until the time the premises were rerented, (3) the amount of attorney's fees and (4) the amount of damages.[1] We affirm the judgment of the trial court.

The following are the undisputed facts, and the facts found by the court, which are relevant to our resolution of this appeal. On or about March 18, 1997, the plaintiff and the defendant entered into a written commercial lease agreement for a period of five years commencing on April 1, 1997. On several occasions during the course of the defendant's occupancy, wastewater leaked into the leased premises. The plaintiff timely repaired each leak. In September, 1998, a major sewer leak affected the premises. The defendant did not make a rental payment for the month of September. The plaintiff brought a summary process action against the defendant for nonpayment of rent on or about September 15, 1998. On or about November 18, 1998, the plaintiff and the defendant stipulated to a judgment of possession with a stay of execution through December 18, 1998. Judgment was entered in accordance with the stipulation. In December, 1998, the defendant vacated the premises.

The plaintiff brought the present action in 1999, alleging that the defendant owed $17,060.68,[2] including rent, use and occupancy, attorney's fees and costs of collec-

---

[1] We note that the defendant withdrew several of his briefed issues at oral argument. Our analysis, therefore, is limited to four of the eight issues discussed in the defendant's brief to this court.

[2] The plaintiff's complaint initially sought $39,646 in damages. In April, 1999, the plaintiff amended its complaint by reducing its claimed damages to $17,060.68.

tion. The defendant responded by filing an answer and a special defense of constructive eviction. The defendant also filed a counterclaim, alleging that the plaintiff's failure to maintain the premises caused him to incur additional expenses and damage to his personal property. On April 19, 1999, the court rendered judgment in favor of the plaintiff, and the defendant appealed on May 10, 1999.

In its oral decision, the court found that the defendant vacated the premises in December, 1998, as a result of the judgment in the summary process action, and the plaintiff rerented the premises as of April, 1999. The court further found that (1) the plaintiff did not cause the sewer problem, (2) the defendant did not give the plaintiff a reasonable time to correct the problem and (3) the defendant did not elect to treat the plaintiff's conduct as a constructive eviction.[3] Moreover, the court found that the plaintiff addressed the sewer problem within a reasonable time. Accordingly, the court rendered judgment in favor of the plaintiff for $15,196.94 for outstanding rent up to March 31, 1999. The court further awarded to the plaintiff $1863.74 in summary process legal fees and court costs that it had incurred in the 1998 summary process action, and $2000[4] in attorney's fees for the present action. In total, the court awarded the plaintiff damages of $19,060.68. The court also ruled in favor of the plaintiff on the defendant's counterclaim.

I

The defendant first claims that the court improperly determined that the plaintiff's failure to clean the prem-

---

[3] The court noted that the defendant did not treat the plaintiff's conduct as a constructive eviction because he continued to occupy the premises and continued to pay rent until September, 1998.

[4] The defendant does not challenge the award of attorney's fees in the amount of $2000 for the present action.

ises and to repair the damage caused by a sewage pipe break did not constitute a constructive eviction and, thus, precluded the plaintiff from recovering any lost rent from the defendant. We disagree.

We review the factual findings of the trial court under our well established clearly erroneous standard. *Haynes Construction Co.* v. *Cascella & Son Construction, Inc.*, 36 Conn. App. 29, 32, 647 A.2d 1015, cert. denied, 231 Conn. 916, 648 A.2d 152 (1994). "The factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Bunting* v. *Bunting*, 60 Conn. App. 665, 678–79, 760 A.2d 989 (2000).

We begin our analysis by noting that "[a] constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." (Internal quotation marks omitted.) *Baretta* v. *T & T Structural, Inc.*, 42 Conn. App. 522, 526, 681 A.2d 359 (1996). "In addition to proving that the premises are untenantable, a party pleading constructive eviction must prove that (1) the problem was caused by the landlord, (2) the tenant vacated the premises because of the problem, and (3) the tenant did not vacate until after giving the landlord reasonable time to correct the problem." Id.

The court found that the defendant failed to prove that the plaintiff caused the sewage problem. The court

concluded that there was no credible evidence to support that element of constructive eviction. Moreover, the court determined that the witnesses for the plaintiff were credible. "The sifting and weighing of evidence is peculiarly the function of the trier [of fact]." *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). "[N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony." (Internal quotation marks omitted.) *Toffolon* v. *Avon*, 173 Conn. 525, 530, 378 A.2d 580 (1977). "The trier is free to accept or reject, in whole or in part, the testimony offered by either party." *Smith* v. *Smith*, supra, 123. That determination of credibility is a function of the trial court.

Next, the court found that the defendant did not satisfy the second element of proving a constructive eviction. The court specifically found that the defendant did not vacate the premises because of the sewage leak.[5] Rather, he vacated the premises in accordance with the stipulated judgment in the summary process action.[6] In addressing that element, the court noted that according to the stipulated agreement, the defendant was required to vacate the premises by December, 1998.

Finally, the court determined that the defendant did not allow the plaintiff a reasonable amount of time to correct the problem as required under the third prong of the constructive eviction test. Those findings are supported by the record. We conclude, therefore, that

[5] The court found that "[a]s to the water leaks, even assuming that there was a constructive eviction, with the defendant continuing occupancy and continu[ing] to pay the rent, it's a clear indication to me that the tenant elected not to treat the landlord's conduct as a constructive eviction."

[6] The court stated that "[w]hen you consider all the factors involved when the tenant claimed that the premises were not habitable for all those months during the water leakage, then a court can come to only one conclusion: That the defendant really surrendered the premises because of the summary process action."

the court correctly found that the defendant was not constructively evicted.

## II

The defendant's second claim is that the court improperly concluded that he was required to pay rent from the time he vacated the premises until the time the premises were rerented without any evidence from the plaintiff as to when the premises were repaired. The defendant further argues that if the court had determined that the premises were uninhabitable from November 3, 1998, through December 10, 1998, then no rent was due until the plaintiff repaired the premises. The defendant recognizes[7] that we must agree that the court was incorrect in finding that there was no constructive eviction for him to prevail on his second claim. Having determined, however, that the court properly found that there was no constructive eviction, this claim must fail.

## III

The defendant next claims that the court improperly determined the amount of attorney's fees for the summary process action.[8] The defendant alleges that the attorney's fees for the summary process action were only $541.38. That claim is not supported by the record. The court determined that the attorney's fees totaled

[7] In his brief, the defendant asserts that "[i]f the court agrees that the facts support the defendant's position that the premises were untenantable and unusable by the tenant during the period November 3, 1998, through at least December 10, 1998, then it follows that no rent was due the plaintiff until the plaintiff could show that the premises were repaired and put into tenantable condition. Since the plaintiff failed to show when the premises were made tenantable and usable, the plaintiff should be precluded from being awarded lost rents as erroneously awarded by the court."

[8] The plaintiff can properly recover attorney's fees for the summary process action because the lease agreement specifically provided that the defendant is responsible for attorney's fees in the event of a dispossession by summary proceeding.

$1863.74, in accordance with the plaintiff's ledger, which was entered into evidence at trial. We conclude, therefore, that the evidence was sufficient to support the court's determination of attorney's fees.

## IV

The defendant finally claims that the court improperly determined the award of damages. The defendant argues that the court improperly included real estate commission fees of $1823.40 in the final award of damages without supporting testimony. We disagree.

"A lease is nothing more than a contract. . . . Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. . . . As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such a breach." (Citations omitted; internal quotation marks omitted.) *Rokalor, Inc.* v. *Connecticut Eating Enterprises, Inc.*, 18 Conn. App. 384, 389, 558 A.2d 265 (1989).

In the present case, the lease and the ledger were entered into evidence without objection. Additionally, the plaintiff presented sufficient testimony to support the total outstanding balance. The lease agreement also supported a claim for real estate commission fees. The agreement provided that in the event of a default or dispossession by summary proceeding, the defendant was responsible for reasonable expenses in connection with reletting, including legal expenses, attorney's fees, brokerage and advertising. Therefore, the award of real estate commission fees as part of the $17,060.68 was proper, and in accordance with the ledger and the lease

agreement. We conclude, therefore, that the court correctly determined the award of damages.

The judgment is affirmed.

In this opinion the other judges concurred.