JACK CAVOLICK *v.* P. GERALD DESIMONE ET AL.
(AC 24532)

Schaller, DiPentima and Peters, Js.

---

Argued December 1, 2004—officially released April 26, 2005

*Richard P. Weinstein,* with whom was *Nathan A. Schatz,* for the appellant-appellee (plaintiff).

*Frank H. Santoro,* with whom, on the brief, were *R. Cornelius Danaher, Jr.,* and *Calum B. Anderson,* for the appellees-appellants (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Jack Cavolick, appeals, and the defendants, P. Gerald DeSimone, Life Consultants, Inc., and Woodgate II Limited Partnership, cross appeal following a trial to the court arising out of a dispute involving a partnership agreement between the parties. The plaintiff claims that the court improperly (1) admitted certain evidence in violation of the hearsay rule and the disclosure requirements for expert witness testimony, (2) made certain factual findings, and (3) sustained the defendants' objection to one of his discovery requests and granted the defendants' motion to quash a subpoena. The defendants cross appeal, claiming that they did not owe the plaintiff a fiduciary duty because the plaintiff, who was a limited partner, did not place any trust in the general partner before entering

into the partnership agreement. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. The plaintiff and DeSimone entered into a working relationship in 1982. The two obtained a contract to develop a condominium project in 1984. While the project was being developed, the two began planning another construction project for an apartment complex that was to be named Woodgate II and later became known as Countrywood at Enfield (Countrywood). The Connecticut Housing Finance Authority (housing authority) was scheduled to finance the project. Both the plaintiff and DeSimone participated in the loan negotiations with the housing authority.

On October 1, 1984, the housing authority committed to the financing for Countrywood and established a plan for the operation of the project. Shortly thereafter, on October 5, 1984, the plaintiff and DeSimone entered into the Woodgate II Limited Partnership Agreement. The plaintiff contributed approximately $100 to the partnership. DeSimone paid the housing authority a nonrefundable commitment fee of $102,000 and guaranteed letters of credit in the amounts of $1,049,000, $56,900, $496,282, and $244,800.

Despite the fact that the plaintiff contributed little financially to the partnership, he represented the partnership and the managing agent, Life Consultants, Inc., at the March 7, 1985 loan closing with the housing authority. The plaintiff executed several documents concerning the operation of Countrywood. The loan closing documents provided that the management and operation of the apartment complex was to be regulated and supervised by the housing authority. Among the documents reviewed, executed and agreed to by the plaintiff was a management agreement.

As a condition to obtaining financing from the housing authority, the partnership executed a covenant of compliance and a regulatory agreement dated March 6, 1985. Pursuant to the regulatory agreement, the partnership agreed that the housing authority would closely regulate and monitor the annual budget. Moreover, at the close of the fiscal year, the partnership was required to furnish the housing authority with a complete financial report prepared by and certified by a certified public accountant, which was to contain a detailed itemized statement of gross revenues, operating expenses, surplus cash and distributions for the following fiscal year. The agreement provided that the housing authority would have a significant amount of control over the management of the property and the compensation to those involved in the project, and would have the ability to review contracts.

The plaintiff commenced his action by a complaint dated April 30, 1999, seeking damages and a distribution of partnership funds. The plaintiff alleged that the defendants breached the terms of the partnership agreement and their fiduciary duties because they (1) failed to make distributions from surplus cash, (2) improperly charged the partnership refinancing fees, furniture and equipment rental fees and overhead costs on construction contracts, (3) improperly paid themselves management fees, (4) engaged in self dealing by providing improper payments to family members and other related parties, and (5) improperly provided Life Consultants, Inc., with office space and paid various costs related to other business practices of Life Consultants, Inc. The court determined that the financing fees and the furniture and equipment fees charged to the partnership were improper and awarded the plaintiff $194,923.57. The plaintiff filed a motion for articulation on September 13, 2003, which the court denied. This court granted review of that decision, but denied the

relief requested on January 16, 2004. Additional facts will be set forth as necessary.

## I

On appeal, the plaintiff contends that the court improperly admitted into evidence a capital needs assessment, defense exhibit 564,[1] under the business record exception to the hearsay rule. The plaintiff claims that because the assessment was not prepared by the partnership or the managing agent, the business record exception does not apply and, in the absence of an exception to the rule, should not have been admitted. In the alternative, the plaintiff contends that the assessment constituted an expert opinion, which was not properly disclosed and, therefore, should not have been admitted at trial. We disagree.

As a preliminary matter, we set forth the applicable standard of review. "The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omit-

---

[1] The defendants' exhibit 564 was a capital needs assessment. The assessment was commissioned by the housing authority and was performed by an entity called On-Site Insight. The assessment was completed in 1996 and revealed that a number of capital improvements needed to be made at that time and during the next twenty years.

ted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 399, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004).

The following additional facts are relevant to the resolution of the plaintiff's claim. On January 15, 2003, during the fourth day of trial, the defendants called as a witness Michael O'Connell, the attorney who represented the partnership in its business matters. During direct examination, the defendants asked O'Connell about the process of modifying the mortgage with the housing authority. To illustrate that the negotiations required the partnership to make deposits into the reserve account and that a capital needs assessment had been done to determine the required amount for the reserve account, the defendants attempted to introduce the assessment into evidence. The plaintiff objected to the introduction of the assessment on the grounds that it was hearsay and that the document purported to be an expert report, which had not been properly disclosed. Although the court did not specify whether the document was hearsay or whether there was a problem of disclosure, it sustained the plaintiff's objection, stating that it would not allow the document into evidence through O'Connell.

Later that day, the defendants called Janice Alexander, who worked for the housing authority. The defendants asked Alexander about the housing authority's procedures for giving a final mortgage loan. Part of the process included obtaining a capital needs study. The defendants then attempted to show her the assessment. The plaintiff objected on the same grounds on which he previously had objected. The court ruled that the assessment would be admitted under the business record exception because the housing authority "typically rel[ies] on this type of report in deciding whether to loan money . . . ." The court explained that in order to fit within the business record exception, the report did not have to be made by the business or organization

because "as long as the organization preparing the report has a business duty to report to the person whose business record is at issue, it can be admissible as a business record." We agree.

General Statutes § 52-180,[2] which outlines the requirements of the business record exception, "should be liberally construed. . . . Appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion." (Citations omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991); see also Conn. Code Evid. § 8-4. The court determined that despite the fact that the report was not prepared by the housing authority, the report was made in the regular course of business, and the organization that conducted the assessment had a duty to prepare the report. See *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 795. The court did not abuse its discretion and properly admitted the assessment under the business record exception.

In response to the plaintiff's objection that the assessment constituted an expert opinion that was not disclosed, the court, referring to *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 219 Conn. 794–95, ruled that the exhibit "lies somewhere between the continuum of fact and opinion, and it was prepared in the ordinary course at the request of [the housing authority] by an outfit that was routinely used by [the housing authority] to do such a report." Furthermore, the court stated: "Even if it [could] be characterized as

[2] General Statutes § 52-180 (a) provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter."

an opinion, the characterization does not automatically render it inadmissible under § 52-180. An opinion included within an otherwise admissible business record is admissible if the entrant would be qualified to give the opinion in oral testimony." See *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, supra, 795. We conclude that the court did not abuse its discretion in admitting the exhibit.

## II

The plaintiff next challenges six of the court's factual findings. We first identify our well settled standard of review. "The court's findings of fact are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . . As our Supreme Court has stated: [Appellate courts] . . . may not retry a case. . . . The [fact-finding] function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Citations omitted, internal quotation marks omitted.) *Benedetto* v. *Wanat*, 79 Conn. App. 139, 146–47, 829 A.2d 901 (2003). We will address each of the plaintiff's claims.

A

The plaintiff's first factual claim focuses on the capital needs assessment. Despite the plaintiff's attempts to argue in part I that the assessment constituted an undisclosed expert opinion, in this claim, the plaintiff contends that because the defendants did not present any expert testimony to support the claim that the funds were set aside for capital needs or to explain the analysis contained in the capital needs study, the court could not have found that the amount of funds contained in the reserve account was necessary. The plaintiff further contends that because the study calculated the needs over a twenty year period, only a portion of those funds were necessary to serve the current needs of the project. Consequently, he argues, the remainder of the funds should have been distributed to the partners. We disagree.

Because we must review the plaintiff's claim under a deferential standard of review and because we already have determined that the court properly relied on the assessment in making its determination, we conclude that there was evidence to support the court's finding that reasonable reserves had not been accumulated in the account from which to make distributions to the partners. At trial, the court found that it was not until the late 1990s that the development project began to generate surplus cash, which was placed in a special account for capital needs. Prior to that time, during a depressed real estate market, the project had operated at a negative cash flow. By 2001, the capital needs account had reached $1,634,841. The capital needs analysis relied on by the court calculated the development's capital needs over a twenty year period at $3,430,730. The court found that because the sum of funds in the account at the time of trial was less than half of the amount recommended by the capital needs assessment, the partnership had not yet accumulated reasonable

reserves from which to make a distribution to the limited partners. The court did not make any determination as to the immediate capital needs of the development. We conclude that such a finding was not necessary because the court merely needed to determine whether the partnership had accumulated reasonable reserves. The court's conclusion that the partnership had not yet accumulated reasonable reserves so as to permit or require distribution to the partners was not clearly erroneous.

## B

The plaintiff also contends that the court improperly determined that the defendants had not made an improper payment of management fees. The plaintiff asserts that Life Consultants, Inc., was required to perform certain functions under the management contract and that because the persons who actually performed those services were employees of the partnership, the partnership improperly paid management fees to Life Consultants, Inc. We disagree.

The court determined that the management agreement should be interpreted as a whole. The court read the agreement to provide that even though the employees should have been agents of Life Consultants, Inc., instead of the partnership, the partnership was still responsible for payment of the salaries regardless of whether they were partnership employees or employees of Life Consultants, Inc. The agreement provided that the owner must reimburse the managing agent for compensation payable to all on-site personnel. That payment was in addition to a separate partnership obligation to pay the managing agent a management fee. Moreover, the court determined that the housing authority's approval of the payment of on-site personnel salaries, in addition to the management fee, showed that the management agreement allowed for the payment of

both fees. The allowance for the payment of both fees seems to suggest that this was proper under the terms of the partnership agreement. We conclude, therefore, that the court's finding was not clearly erroneous.

C

The plaintiff next claims that the court's finding that the defendants did not breach their fiduciary duty to him by providing office space and paying office expenses for Life Consultants, Inc., was clearly erroneous. Specifically, the plaintiff contends that the defendants should not have allowed Life Consultants, Inc., to use the office space at Countrywood for business beyond the management of Countrywood. Moreover, the plaintiff maintains that the court improperly determined that the defendants allocated costs between those for the partnership and those for the other business ventures of Life Consultants, Inc. We disagree.

The court found that the agreement required the defendants to provide suitable office space for Life Consultants, Inc. The court ruled that because the plaintiff was aware of that provision and agreed to the arrangement, he could not claim that it was a breach of fiduciary duty. As for the payment of office expenses, the court found that the defendants had provided clear and convincing evidence that they did not comingle expenses. In fact, the court looked to invoices, receipts and records, and determined that telephone bills, copying charges and other office related expenses were properly allocated. Despite the plaintiff's argument that there should have been a set procedure for the allocation of business expenses, we conclude that there was evidence to support the court's finding.

D

The plaintiff's fourth factual claim centers around the salary and benefits provided to Karen Naida, DeSi-

mone's daughter, who was employed by the partnership to manage Countrywood. According to the plaintiff, the court's determination regarding Naida's salary was inappropriate because no evidence was presented regarding the reasonable range of salaries for a person in a similar professional position. The plaintiff also argues that the court failed to undertake a meaningful examination of whether the payment of her travel expenses and health insurance costs was proper.

The court considered several factors when examining Naida's salary. The court found that Naida worked nearly forty to fifty hours per week and was often on call during the night. Beginning in 1998, Naida earned a salary of $52,000 per year. The cost of Naida's health insurance was deducted from her salary. On the basis of those findings, the court concluded that Naida was not compensated "based on her filial relationship with DeSimone . . . ." The court also determined that the payment of her automobile and travel expenses was not improper, and that those expenses were reasonable business expenses that were allocated properly.[3] We conclude that there was evidence to support the court's findings and, thus, defer to the court's determinations.

### E

The plaintiff's fifth factual claim challenges the court's finding that the defendants did not breach a fiduciary duty through various related party transactions. Although the plaintiff mentions several related party transactions, the only alleged breach that the plaintiff discusses in any detail is a $5000 charitable contribution to Catholic Charities from partnership funds.[4] The plaintiff maintains that the court did not address those issues and urges us to review them.

---

[3] See part II C.

[4] In his brief, the plaintiff mentions the following transactions: (1) charging reduced rents to family members occupying Countrywood; (2) hiring Interspace, Inc., owned by DeSimone's son-in-law, to do work for the limited partnership; (3) using limited partnership funds to pay personal credit card

On September 12, 2003, the plaintiff filed a motion for articulation with respect to the court's decision and several evidentiary and discovery rulings. In the motion for articulation, the plaintiff sought to have the court articulate certain claims about the defendants' alleged self dealing. Particularly, the plaintiff requested that the court address his claim, which he refers to as a related party transaction, that the partnership used partnership funds to make a $5000 donation to Catholic Charities. The court denied the plaintiff's motion for articulation on October 9, 2003. On October 24, 2003, the plaintiff timely filed a motion for review of the court's decision. We granted review, but denied the relief requested on January 16, 2004.

The court found that the partnership agreement, signed by the plaintiff, "expressly allow[ed] the general partners and members of their families to contract with the partnership . . . ." Moreover, the court noted that the plaintiff was aware of many related party transactions. In fact, "[the plaintiff] was a part of the 'family involvement' in [DeSimone's] business projects. He entered into a partnership . . . with [DeSimone's] wife." We conclude, therefore, that there was evidence to support the court's conclusion that the plaintiff had been aware of many of those transactions and had engaged in some of those related party transactions himself. The court did not abuse its discretion in determining that the transactions were proper.

F

The plaintiff's final challenge to the court's factual findings concerns the fees charged for construction

charges incurred by DeSimone; and (4) using limited partnership funds to make a charitable contribution on behalf of DeSimone. Nevertheless, the plaintiff states that he "will address only one such claim, namely, the use of limited partnership funds to make a charitable contribution on behalf of defendant DeSimone." We therefore consider those additional related party transaction claims abandoned.

contracts. The plaintiff contends that the court improperly concluded that no improper overhead charges were included in bills to the partnership from Life Consultants, Inc. We disagree.

Although the court declined to consider that claim because it was not raised in the complaint, the court noted that there was no evidence to support the plaintiff's claims that all repair contracts from 1990 through 2000 contained improper overhead charges. The plaintiff maintains that the court's refusal to review his claim because it was not addressed in the complaint suggests that this is an issue of interpretation of the pleadings, which implicates a question of law. The plaintiff maintains that the court did not read the pleadings broadly enough and that the complaint presented an illustrative list of improper charges rather than an exhaustive list.

"It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [her] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Shea*, 79 Conn. App. 840, 842–43, 832 A.2d 97 (2003).

The plaintiff is correct that "[t]he interpretation of pleadings is a question of law to be determined by the language of the pleadings and the basic nature of the underlying factual situation." *Hackbarth* v. *Hackbarth*, 62 Conn. App. 490, 495, 767 A.2d 1276, cert. denied, 256 Conn. 916, 773 A.2d 944 (2001). This, however, is a very fact intensive case. The complaint lists a variety of instances of alleged breaches of fiduciary duty. The paragraph of the third amended complaint in question

lists a variety of actions with specificity. There is no language to indicate that the list was not exhaustive. The court, therefore, was correct in concluding that the failure to list this alleged breach, when the remainder of the actions were listed, was an indication that this claim was not included properly within the allegations of the complaint. To allow the plaintiff to claim that the complaint should be read so broadly as to include any variety of actions that he contends were a breach of fiduciary duty would lead to surprise and prejudice to the defendants. See *Harris* v. *Shea*, supra, 79 Conn. App. 842–43. The court was correct to conclude that the allegations in the complaint did not authorize recovery for the plaintiff's claim.

### III

The plaintiff finally claims that the court improperly denied his requests for discovery and improperly granted the defendants' motion to quash the subpoena served on Naida. We disagree.

As the plaintiff stated in his brief, his "claims covered nearly every aspect of Woodgate's operations . . . ." Consequently, the plaintiff's discovery requests were exhaustive. The defendants objected to the plaintiff's requests, and the court sustained those objections except with respect to the requests for canceled checks from 1992 through the present. The plaintiff maintains that the court's ruling constitutes an abuse of discretion because the court's refusal to order full disclosure of bills, invoices and other requested pieces of evidence severely impaired his ability to investigate his claims against the defendants.

"With respect to the appropriate standard of review, Practice Book § 13-14 (a) provides in relevant part that a trial court may, on motion [to compel production], make such order as the ends of justice require. Consequently, the granting or denial of a discovery request

rests in the sound discretion of the court . . . and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did." (Internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 42, 830 A.2d 240 (2003).

There is nothing to indicate that the court's ruling constituted an abuse of discretion. The plaintiff's discovery requests were overly broad and covered nearly every aspect of the partnership's workings. The plaintiff was able to procure and to present all of the canceled checks from the partnership and has not shown us that those were inadequate for the presentation of his case.

The plaintiff also contends that the court improperly granted the defendants' motion to quash his trial subpoena of Naida. The subpoena requested some undisclosed and some updated documentation. The court ruled that the plaintiff could not use the subpoena to obtain documents that were requested but not allowed during pretrial discovery or that could have been requested during pretrial discovery. The plaintiff contends that the court's ruling so impaired his ability to present his case that the refusal constituted an abuse of discretion.

As the plaintiff concedes, "[a] trial court's decision to quash a subpoena is . . . reviewed on appeal under the 'abuse of discretion' standard." See *Curry* v. *Burns*, 33 Conn. App. 65, 68–71, 633 A.2d 315 (1993). Just as we concluded that the court did not abuse its discretion in denying the plaintiff's discovery requests, we also conclude that the court did not abuse its discretion in granting the defendants' motion to quash the subpoena of Naida. Naida testified at trial and was subject to cross-examination. The court determined that it was

improper for the plaintiff to use a subpoena to gain access to information that already had been denied to him through discovery requests. We cannot conclude that that constitutes an abuse of the court's discretion.

## IV

The defendants cross appeal, claiming that they did not owe a fiduciary duty to the plaintiff because he did not place trust in the defendants prior to signing the partnership agreement. The defendants contend that the plaintiff's lack of trust suggested that he considered his dealings to be purely contractual.[5] According to the defendants, that lack of confidence and trust in the

[5] To support that position, the defendants rely primarily on *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 717 A.2d 724 (1998). In *Beverly Hills Concepts, Inc.*, our Supreme Court held that a junior associate in a law firm should not have been liable for a breach of fiduciary duty because she did not represent that she had "superior knowledge, skill or expertise in the field of franchising, nor [did] she [seek] the plaintiff's special trust . . . ." Id., 57. Although the court found that the associate should have sought out more supervision of her work, the fact that she, herself, did not represent any skill or expertise to the plaintiffs showed that she was not liable for the breach of fiduciary duty. Id. The Supreme Court, however, upheld the trial court's determination that the law firm and the partners of that law firm were still liable for a breach of fiduciary duty.

We fail to see the similarities between *Beverly Hills Concepts, Inc.*, and this case. Here, the plaintiff knowingly entered into a partnership with the defendants, a situation that creates a fiduciary relationship. In *Beverly Hills Concepts, Inc.*, a legal malpractice case, a partner of the defendant law firm represented to the plaintiffs that he would be working on their case and that he had experience with similar transactions. Id. The partner, however, delegated the primary responsibility for the case to an associate. Id. The question before the Supreme Court was whether the associate's professional negligence rose to the level of a breach of fiduciary duty. Id., 55. The court determined that the associate was negligent, but not to the extent of a breach of fiduciary duty. Id., 56–57. Our Supreme Court did not foreclose the possibility of the existence of a fiduciary relationship between the plaintiff and the associate, but held that there was no breach of a fiduciary duty. Id., 57. In this case, the defendants have failed to present us any legal basis for their cross appeal. Our case law does not suggest that a lack of trust or confidence or a pure contractual relationship negates the existence of a fiduciary relationship.

relationship negates the policy behind imposing a fiduciary duty, namely, to protect the interests of one party from the actions of the party who possesses greater skill and expertise, and who is under a duty to represent the interests of the other party. See *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 219, 635 A.2d 798 (1994). The defendants maintain, therefore, that the court was incorrect in imposing the burden shifting that occurs in cases concerning breaches of fiduciary duty.

The defendants' argument is dubious at best. It is a well established principle that general partners and limited partners are bound in a fiduciary relationship. Id., 218. The parties organized their business relationship as a limited partnership. By agreeing to organize as a partnership, the parties agreed to certain obligations and liabilities. Because the defendants have failed to convince us that we should depart from such a well established principle that partnerships create fiduciary relationships, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.