### JAMES R. WELSCH *v.* MICHAEL GROAT
### (AC 26665)

Flynn, C. J., and Rogers and Lavine, Js.

Argued March 23—officially released May 30, 2006

*Michael J. Leventhal,* for the appellant (plaintiff).

*Gregory J. Kycia,* with whom, on the brief, was *Sean E. Donlan,* for the appellee (defendant).

*Opinion*

LAVINE, J. The plaintiff, James R. Welsch, appeals from the judgment of the trial court rendered in favor of the defendant, Michael Groat, in an action for breach of a lease. The principal issue in this appeal is whether the court properly found that the leased premises were rendered uninhabitable by the plaintiff's failure to make necessary repairs, thereby resulting in a constructive eviction. We affirm the judgment of the trial court.

The following facts as found by the trial court are relevant to our resolution of the plaintiff's appeal. On June 1, 2003, the parties entered into a one year written, residential lease agreement (lease) for a single-family residence in Old Saybrook. The defendant used the premises as his primary residence and intended to use the finished portion of the basement as a bedroom for his three children. During the first month of the defendant's occupancy, he and his three children became aware of certain deficiencies with the premises. In particular, the defendant noticed water damage and the presence of mold and mildew in the basement. Due to the water problems in the basement, the defendant was unable to use that area as a bedroom for his children, as he originally had intended.

Sometime in early July, 2003, the defendant informed the plaintiff of the water damage and the formation of mold and mildew in the basement. In response to that notification, the plaintiff's attorney sent a letter dated July 23, 2003, that referred the defendant to a provision

in the lease that stated that the defendant had inspected the premises and accepted its condition "as is."[1]

By letter dated August 1, 2003, the defendant again informed the plaintiff of the defects in the premises. Specifically, the defendant made the following assertions with regard to the basement: "The basement is constantly wet. There are puddles when it rains and a constant wet slime along the east wall; the paneling and trim is badly rotted, obviously a long-term problem; paint is peeling from concrete walls . . . the latex floor is bubbling and peeling from wetness. . . . [T]here are significant mold and mildew issues with the entire basement, especially the finished living area." The defendant moved out of the residence at the end of August.

The plaintiff sought damages from the defendant, alleging that the defendant had breached the lease. The defendant denied the allegations and filed a four count counterclaim, which included a claim for constructive eviction premised on the defendant's inability to use a portion of the premises due to certain defects, including water leakage and the presence of mold and mildew.[2]

In its May 26, 2005 memorandum of decision, the court rendered judgment in favor of the defendant on the plaintiff's breach of lease claim and on the defendant's constructive eviction counterclaim.[3] The court found that "in addition to water damage, [the] presence of mold and mildew" made it "impossible" for the defendant to use the basement room as a bedroom for his children. On the basis of that finding, the court con-

---

[1] On appeal, the plaintiff does not claim that the defendant's acceptance of the premises "as is" affected his constructive eviction claim.

[2] In addition to the constructive eviction claim, the counterclaim also included allegations that the plaintiff had (1) failed to repair defects, (2) failed to inform the defendant of the damage caused by the defects and (3) intentionally concealed defects.

[3] In its May 26, 2005 memorandum of decision, the court dismissed the remaining counts of the counterclaim.

cluded that the plaintiff's failure to make the necessary repairs to the rental property in regard to the water damage, mold and mildew "rendered the premises uninhabitable and constituted a constructive eviction of the defendant and a breach of lease by the plaintiff."

After issuing its memorandum of decision, the court addressed the plaintiff's motion for articulation concerning whether the plaintiff had received notice of the conditions that rendered the premises uninhabitable and the factual bases for its finding of constructive eviction. In its articulation, the court referred to the defendant's letter to the plaintiff dated August 1, 2003, and the defendant's assuming occupancy of the premises. The court further stated that the factual bases for its findings were "self-evident."[4]

On appeal, the plaintiff raises a number of claims that boil down to a single dispositive issue, namely, whether the court properly found that the leased premises were rendered uninhabitable by the plaintiff's failure to make necessary repairs, thereby resulting in a constructive eviction.[5]

To evaluate the plaintiff's claim, we begin with the prevailing standard of review. "We review the factual findings of the trial court under our well established clearly erroneous standard. . . . The factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no

[4] The plaintiff subsequently filed a motion for review of the court's articulation with this court. We granted the motion but denied the relief requested.

[5] The plaintiff claims that the court improperly found that (1) the defendant did not breach the lease, (2) the plaintiff breached the lease by failing to remedy certain conditions, thereby resulting in a constructive eviction, (3) the entire property was uninhabitable, thereby resulting in a constructive eviction, and (4) the defendant did not breach the lease by failing to pay rent and abandoning the premises.

evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 332, 764 A.2d 199 (2001).

"[A] constructive eviction arises where a landlord, while not actually depriving the tenant of possession of any part of the premises leased, has done or suffered some act by which the premises are rendered untenantable, and has thereby caused a failure of consideration for the tenant's promise to pay rent." (Internal quotation marks omitted.) *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 220, 455 A.2d 857 (1983). "In addition to proving that the premises are untenantable, a party pleading constructive eviction must prove that (1) the problem was caused by the landlord, (2) the tenant vacated the premises because of the problem, and (3) the tenant did not vacate until after giving the landlord reasonable time to correct the problem." (Internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, supra, 61 Conn. App. 332; see also *Thomas* v. *Roper*, 162 Conn. 343, 349, 294 A.2d 321 (1972). Moreover, "[w]hether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenant's use of the premises is interfered with by the injury claimed. . . . That factual determination will not be disturbed by [a reviewing] court unless the conclusion is such that it could not reasonably be reached by the trier." (Internal quotation marks omitted.) *Johnson* v. *Fuller*, 190 Conn. 552, 556–57, 461 A.2d 988 (1983). It is necessary, therefore, to review the court's findings along with the factual

record to determine whether the court properly found that the defendant was constructively evicted.

The court found that the defendant had proven that the premises were untenantable due to the plaintiff's failure to make necessary repairs in regard to the water damage and the presence of mold and mildew.[6] The court based that finding on the testimony of the defendant and that of the defendant's witnesses, coupled with the physical evidence, which supported this element of constructive eviction. The defendant himself testified and produced witnesses, Leonard Pass, a subcontractor, and Jacqueline Jenkins, a Realtor, who testified as to the presence of water damage, mold and mildew in the basement of the premises.[7] Specifically, Pass testi-

---

[6] We note that the defendant alleged common-law constructive eviction and was not seeking a statutory remedy predicated on the Landlord and Tenant Act (act), General Statutes § 47a-1 et seq. The plaintiff urges this court to rely on the provisions of that act specifically set forth in *Visco* v. *Cody*, 16 Conn. App. 444, 450, 547 A.2d 935 (1988), in deciding the merits of his appeal. We decline to do so, as there is no indication in the plainly expressed language of the act to suggest that the legislature intended to supplant any common-law claim for constructive eviction when it created a private cause of action under the act. As our Supreme Court has stated, "[a]lthough the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 290, 627 A.2d 1288 (1993). Contrary to the assertions of the plaintiff, therefore, the provisions of the act are not relevant to his appeal.

[7] The plaintiff argues that the defendant failed to prove that the *entire* property was rendered uninhabitable. The plaintiff misapprehends what the defendant was required to prove for a common-law claim of constructive eviction. As our Supreme Court long ago established, "[a]ny disturbance of the tenant's possession by the landlord whereby the premises are rendered unfit or unsuitable for occupancy, *in whole or in part, for the purposes for which they were leased amounts to a constructive eviction . . . .*" (Emphasis added; internal quotation marks omitted.) *Amsterdam Realty Co.* v. *Johnson*, 115 Conn. 243, 248, 161 A. 339 (1932). The defendant testified that he intended to use the basement as a bedroom for his three children, who stayed with him a couple of days during each week and on alternate weekends, and that this was made impossible because of the water damage and the presence of mold and mildew. In addition to testifying about the physical

fied that he "observed rot, and I know it's rot because when you touch it, the stuff falls apart. It's not a stain, it's rot. I observed so-called mold and mildew. When you see stuff growing, in the trade, we refer to it as either mold or mildew . . . ." Jenkins testified that "[t]here was, what I consider in real estate, mildew, probably mold. . . . [M]y finger went right through the wall." Although there was conflicting testimony given by the plaintiff as to the condition of the basement, the plaintiff conceded that he saw mildew in the basement. The court found that the defendant and his witnesses were credible. In addition, the physical evidence submitted bolstered the testimony offered by the defendant and his witnesses. Photographs of the basement that showed water damage, mold and mildew were offered into evidence.

It is an abiding principle of our jurisprudence that "[t]he sifting and weighing of evidence is peculiarly the function of the trier [of fact]. [N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier has the witnesses before it and is in the position to analyze all the evidence. The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). The determination of the credibility of the witnesses is a function of the trial court, and we cannot supplant that function when considering issues on appeal. On the basis of the factual record, we cannot conclude that the court's finding that the premises were untenantable was clearly erroneous.[8]

---

presence of water, the defendant testified that mold was growing on the children's clothing and bedding.

[8] The plaintiff argues that the absence of expert testimony renders the court's findings inadequate. We reject that argument. As our Supreme Court has stated in regard to the necessity of expert testimony, "[a]lthough expert testimony may be helpful in many instances, it is required only when the

The court also found that the defendant satisfied the second element of constructive eviction. The finding that the defendant vacated the premises because of the existing problems is a logical outgrowth of the court's conclusion that the plaintiff failed to "remedy the conditions with the urgency and intensity warranted by the scope and the nature of the needed repairs . . . ." After reviewing the factual record, we find adequate support for that conclusion. The defendant testified that he vacated the premises in late August, 2003, because of ongoing safety concerns for himself and his three children due to the continuing problems created by the water damage and the presence of mold and mildew.

Finally, the court found that the defendant had allowed the plaintiff a reasonable amount of time to correct the problem, as required under the third prong of the constructive eviction test. The defendant testified that he notified the plaintiff about the water damage in early July, 2003, and about the mold and mildew in his letter dated August 1, 2003. Although the defendant testified that he first communicated the problem as being a wet basement, he also characterized the problem to the plaintiff as "long-term" and "on-going" during this first communication. At trial, the defendant offered into evidence a letter from the plaintiff's attorney addressed to the defendant, dated July 23, 2003, which supported that testimony. That letter specifically stated that the defendant had "informed this office by telephone and [the plaintiff] by letter that certain deficiencies exist in the premises you are renting," and directed

question involved goes beyond the field of ordinary knowledge and experience of the trier of fact. . . . The trier of fact need not close its eyes to matters of common knowledge solely because the evidence includes no expert testimony on those matters." (Internal quotation marks omitted.) *State* v. *Smith*, 273 Conn. 204, 211, 869 A.2d 171 (2005). In this instance, we are satisfied that the court was able to evaluate the condition of the basement without the need for expert testimony.

the defendant to a provision in the lease in which the defendant acknowledged "inspecting the premises and accepting them as is." Notwithstanding the July 23, 2003 letter, the plaintiff testified that he had received no communication from the defendant regarding any deficiencies with the premises prior to receiving the defendant's letter dated August 1, 2003.

As noted previously, "[Appellate courts] . . . may not retry a case. . . . The [fact-finding] function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." (Internal quotation marks omitted.) *Cavolick* v. *DeSimone*, 88 Conn. App. 638, 646, 870 A.2d 1147, cert. denied, 274 Conn. 906, 876 A.2d 1198 (2005).

Although the defendant did not explicitly state in his initial communication to the plaintiff that there was mold and mildew in the basement of the premises, it was not unreasonable for the court, in light of the full record, to draw the inference that a long-term and ongoing problem with water permitted mold and mildew to grow. As we have often stated, "[i]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 642, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005). "In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge

or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *In re Kristy A.*, 83 Conn. App. 298, 316, 848 A.2d 1276, cert. denied, 271 Conn. 921, 859 A.2d 579 (2004). The court drew a reasonable inference on the basis of the testimony and other evidence offered at trial that the plaintiff adequately was apprised of the water damage, as well as the growth of mold and mildew, and given a reasonable amount of time in which to remedy the situation.[9]

The defendant testified that he vacated the premises at the end of August, 2003, at which time the plaintiff still had not taken any measures to remedy the water damage or mold and mildew in the basement. Although the plaintiff took some action in regard to some of the other defects referenced in the defendant's August 1, 2003 letter, the court found that he did not take adequate measures to remedy the water damage and the mold and mildew with the "urgency and intensity warranted by the scope and nature of the needed repairs . . . ." Those findings are supported adequately by the factual record. We conclude, therefore, that the court properly found that the defendant was constructively evicted.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Moreover, we note that the court's finding that the defendant again gave notice to the plaintiff of the water damage and the presence of mold and mildew in his letter dated August 1, 2003, also supports the court's conclusion that the plaintiff was given a reasonable amount of time to remedy the situation.