******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SARJAC PARTNERS, LLC *v.*
# SHAUNA GIULIANO
# (AC 48561)

Cradle, C. J., and Elgo and Westbrook, Js.

*Syllabus*

The plaintiff landlord appealed from the trial court's judgment for the defendant tenant in its summary process action, in which the defendant filed a counterclaim alleging, inter alia, constructive eviction. The plaintiff claimed that the court erred in finding that it breached the lease agreement and constructively evicted the defendant. *Held*:

The trial court's findings were not clearly erroneous, as this court could not conclude that the findings were not supported by any evidence, nor was this court left with the definite and firm conviction that a mistake had been made.

Argued February 11—officially released June 30, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of Hartford, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Lopez, J.*; judgment for the defendant on the complaint and in part on the counterclaim, from which the plaintiff appealed to this court. *Affirmed*.

*Christopher R. Boy*, with whom was *Gary J. Green*, for the appellant (plaintiff).

*Benjamin Ancona, Jr.*, for the appellee (defendant).

*Opinion*

PER CURIAM. In this summary process action, the plaintiff, Sarjac Partners, LLC, appeals from the judgment of the trial court, rendered in favor of the defendant, Shauna Giuliano, on the plaintiff's claim of breach of contract and on the counts of the defendant's counterclaim alleging breach of contract and constructive eviction.[1] On appeal, the plaintiff claims that the court erred in finding that it breached the subject lease

---

[1] The court found in favor of the plaintiff on the counts of the defendant's counterclaim alleging breach of the implied covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade

agreement and constructively evicted the defendant.[2] We affirm the judgment of the trial court.

The following facts, as set forth by the trial court, and procedural history are relevant to our consideration of this appeal. The plaintiff managed a multiunit commercial property located at 36 LaSalle Road in West Hartford. In July 2022, the plaintiff entered into a written four year lease with the defendant, who owned and operated a hair salon, for one of the units that was located on the second floor.[3] The term of the lease was from September 1, 2021, until August 31, 2025. The lease agreement provided in relevant part that the plaintiff would keep the premises reasonably maintained so long as the defendant was not in default on her rent obligations. The defendant did not pay rent in August 2023 and vacated the premises at some point during that month.

In February 2024, the plaintiff commenced this action alleging that the defendant breached the lease agreement in that she had vacated the premises prior to its expiration. The plaintiff sought damages for, inter alia, unpaid rent.

The defendant thereafter filed an answer denying the allegations of the plaintiff's complaint. The defendant also filed a four count counterclaim alleging constructive eviction, breach of contract, breach of the implied covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The crux of the defendant's

Practices Act, General Statutes § 42-110a et seq. The court's judgment on these two counts has not been challenged on appeal.

[2] The plaintiff also claims that the court erred in awarding damages to the defendant in that "the record does not support a finding of a breach of the lease or of constructive eviction." The plaintiff does not assert a claim of error as to the award of damages itself but only insofar as the court erred in finding that it breached the lease and constructively evicted the defendant. Because we reject the plaintiff's challenge to the court's findings that it breached the lease agreement and constructively evicted the defendant, the plaintiff's claim as to damages also fails.

[3] At that time, there were three tenants at 36 Lasalle Road: "a hookah lounge, a restaurant, a bar, and soon to be restaurant."

claims was that the plaintiff failed to reasonably maintain the premises.

Following a trial at which both parties testified, the court issued a memorandum of decision wherein it found in favor of the defendant on the plaintiff's claim of breach of contract and the counts of the defendant's counterclaim alleging breach of contract and constructive eviction.[4] The court noted that there was no dispute that there were maintenance issues on the premises but that the defendant's testimony depicted those issues as more extensive than the plaintiff's testimony. The court recounted: "For example, the defendant testified that, on the weekends, the common areas frequently had holes punched into the walls and were littered with beer bottles and cups and broken glass. She further testified that, on weekends, the bathrooms were frequently exceedingly dirty and/or covered in vomit and/or clogged. Similarly, the defendant testified to extensive issues with the elevator. It was frequently out of service, and even when it was working, it lacked finished flooring for months, and a sticky substance covered the floor. With regard to the other tenants leaving materials in the common hallway, the defendant testified that these materials actually obstructed the common hallway and occasionally the elevator. The defendant testified that ceiling tiles were stained and/or loose and/or falling into the common hallway due to an unrepaired roof causing water issues. She further testified that ceiling tiles fell in her own space, onto one of her salon chairs, multiple times due to the condition of the roof. Despite having to constantly complain about these conditions, the defendant testified that the plaintiff was generally responsive to complaints and that a work-around was usually possible. For example, she testified that, when the elevator was broken, a side door was propped open to allow access to the stairs. Nevertheless, the defendant testified that, while she was able to operate the business, she had lost both customers and employees due to the condition of the premises. The defendant's testimony is that she believed

_____
[4]See footnote 1 of this opinion.

[that] the plaintiff's failure to correct these issues would continue to negatively impact her business. The court finds this testimony both credible and unrefuted.

"According to the defendant, the maintenance issues became critical when the plaintiff advised the defendant that she could no longer prop the side door open to allow access to the stairs when the elevator was broken. The defendant testified that the plaintiff advised it wanted, or had, to maintain the side door secured. When the defendant asked the plaintiff how her clients were supposed to enter the premises, the plaintiff advised that the defendant should post a sign asking any arriving clients to call the defendant to let them in. The defendant testified that requiring clients to call to be let in would require [her] to stop cutting hair, answer the phone, leave an existing customer to go downstairs to let the arriving customer in, and return upstairs. The defendant testified that she could not run a hair cutting business that way and that she advised the plaintiff of the same. The court finds this testimony credible.

"The defendant admitted on cross-examination that the plaintiff did not, itself, physically cause any of these issues and that she knew that the other tenants operated a bar and/or restaurant at the time she entered into the lease. The court finds the fact that the plaintiff did not, itself, litter or vandalize the premises does not excuse [its] failure to maintain the premises pursuant to the terms of the lease [agreement]. Neither does the defendant's knowledge regarding the business operations of the other tenants excuse the plaintiff's failure to maintain the premises under the lease. The court also finds that there was no breach by the defendant under the 2022 lease [and that] the evidence establishes that all amounts due under the 2022 lease, except for the August 2023 rent and rent due after the defendant vacated, were paid."

On the basis of the foregoing, the court found that the plaintiff breached the lease agreement by failing to reasonably maintain the premises and, accordingly, rendered judgment for the defendant on the plaintiff's

breach of contract claim and the counts of the defendant's counterclaim alleging breach of contract and constructive eviction.

In addressing the defendant's claim of constructive eviction, the court explained: "The testimony regarding the general conditions of the common hallway and bathrooms establishes that there were serious maintenance issues with the premises, but it does not, necessarily, establish that the premises were untenantable. However, when that evidence is coupled with the evidence concerning the ceiling tiles falling onto one of defendant's own chairs multiple times, the prohibition against propping open the side door when the elevator was broken and the proposed work-around, and the defendant losing customers and employees, the court finds, by a preponderance of the evidence, that the premises [was] untenantable in light of the [defendant's] intended use of the premises and the interference with [the defendant's] use [was] caused by the condition of the premises."

On the basis of the foregoing, the court found that the plaintiff's failure to maintain the premises interfered with the defendant's ability to use the premises and caused her to vacate them. The court further found that the plaintiff had been notified of the maintenance issues and had been given a reasonable time to correct them prior to the defendant vacating the premises. This appeal followed.

On appeal, the plaintiff claims that the court erroneously found that it breached the lease agreement and constructively evicted the defendant from the premises. Because both of the plaintiff's claims present issues of fact, we review them for clear error. See *Villwell Builders I, LLC* v. *Pereira*, 237 Conn. App. 45, 54, 349 A.3d 590 (2026) (determination of whether contract has been breached is question of fact); *Welsch* v. *Groat*, 95 Conn. App. 658, 662, 897 A.2d 710 (2006) (whether premises is untenantable for purposes of constructive eviction is question of fact). "It is well settled that a factual finding is not clearly erroneous unless it is not supported by

any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made . . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Commerce Park Associates, LLC* v. *Robbins*, 193 Conn. App. 697, 719, 220 A.3d 86 (2019), cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 447 (2020), and cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 448 (2020).

We have reviewed the record before the trial court and cannot conclude that its findings are not supported by any evidence; nor are we left with the definite and firm conviction that a mistake has been made. We therefore conclude that the court's findings were not clearly erroneous and the plaintiff's claims on appeal are unavailing.

The judgment is affirmed.