******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# APPENDIX
## ALEXIS SANTOS *v.* COMMISSIONER OF CORRECTION*

Superior Court, Judicial District of Tolland

File No. CV-14-4005961-S

Memorandum filed April 5, 2017

*Proceedings*

Memorandum of decision after completed habeas corpus trial to court. *Judgment for respondent.*

*James E. Mortimer*, assigned counsel, for the petitioner.

*Eva B. Lenczewski*, supervisory assistant state's attorney, for the respondent.

*Opinion*

OLIVER, J. The petitioner, Alexis Santos, brings this petition for a writ of habeas corpus, claiming that his criminal defense attorney provided him ineffective assistance in violation of the state and federal constitutions, and seeking to have his convictions vacated. Specifically, the petitioner claims, in his amended petition filed July 22, 2016, that his right to effective legal representation was denied in that his counsel, Attorney Tashun Bowden-Lewis, committed a number of errors at trial.

The petitioner claims that his right to effective legal representation at trial was denied in that his underlying trial counsel was constitutionally deficient in the following ways:

a. She did not retain, consult with and present the testimony of a mental health professional with an expertise in investigating and evaluating child sexual abuse allegations in order to:

1. Call into question the reliability of victim M.H.'s disclosures;

2. Call into question the reliability of victim Y.H.'s disclosure;

3. Rebut the testimony of prosecution witness Theresa Montelli concerning "common characteristics and behaviors" of sexually abused children;

4. Rebut the testimony of prosecution expert witness Theresa Montelli concerning the statistical probabilities of children and recantation;

5. Provide a consultation source to counsel so as to avoid eliciting damaging information on cross-examination concerning recantations;

6. Provide an alternative innocent explanation for false allegations; and

7. Rebut the credibility of the forensic interviewer re: failing to explore alternative innocent explanations.

b. She failed to adequately cross-examine, impeach and otherwise challenge the testimony of the victim M.H., concerning her motive, interest and bias against the petitioner;

c. She failed to adequately object to the introduction of M.H.'s forensic interview based on hearsay grounds;

d. She failed to adequately challenge the testimony of Y.H. concerning her motive, interest and bias against the petitioner;

e. She failed to adequately object to the introduction of Theresa Montelli's expert testimony;

f. She failed to adequately object, based on relevancy, to the testimony of Theresa Montelli concerning com-

mon characteristics and behaviors of sexually abused children;

g. She failed to adequately challenge the testimony of Theresa Montelli concerning her knowledge of statistical data in the field of child sexual abuse;

h. She failed to adequately challenge the testimony of O.S., the mother of the complaining witnesses;

i. She failed to investigate and introduce evidence of the petitioner's work history to challenge the victims' testimony as well as to challenge the notion of the petitioner's access to the victims;

j. She failed to properly object to prosecution witness Donna Meyer's testimony characterizing M.H.'s testimony as credible;

k. She failed to call Daisy Cruz as a witness in the defense case-in-chief;

l. She failed to call Claribel Santos, Carlos Santos and Tanya Wilcher–Lombardo as witnesses in the defense case-in-chief to challenge:

1. The victims' testimony re: exterior door locks on their bedroom doors;

2. The petitioner's access to the victims;

3. O.S.'s testimony re: her work history; and

4. The time frame during which the petitioner resided with the victims; and

m. She failed to present the trial court with supporting information as to the unavailability of Daisy Cruz so as to cause the trial court to allow the testimony of Ms. Cruz by either videoconference or deposition.

The respondent, the Commissioner of Correction, denies the allegations. The court heard the trial of this matter on the merits on September 13, October 24 and December 21, 2016. The petitioner called eight witnesses: himself, Attorney Bowden-Lewis, Tanya Lombardo, Jeffrey Cianciolo, Claribel Santos, Dayanara Santos, expert mental health witness David Mantell and expert legal witness Kenneth Simon. Despite repeated diligent attempts, the petitioner was unable to secure the testimony of Daisy Cruz. The petitioner entered into evidence a number of exhibits. The respondent called no witnesses and offered three exhibits. Based upon the credible evidence presented, the court finds the issues for the respondent and denies the petition.

## I

## PROCEDURAL HISTORY

On September 24, 2012, in the Waterbury judicial district, in the matter of *State* v. *Santos*, Docket No. CR-11-401131, following a jury trial, the petitioner was convicted of four counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2),

four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and one count of risk of injury to a child in violation of § 53-21 (a) (1). In docket number CR-11-402391, the petitioner was convicted of one count of sexual assault in the first degree, one count of risk of injury to a child in violation of § 53-21 (a) (2), one count of risk of injury to a child in violation of § 53-21 (a) (1) and one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A). On November 30, 2012, the trial court, *Crawford, J.*, sentenced the petitioner to a total effective term of twenty years of incarceration followed by twenty years of special parole.

The petitioner appealed from the underlying criminal judgment, and on March 24, 2014, the Appellate Court affirmed the conviction per curiam. *State* v. *Santos*, 148 Conn. App. 907, 86 A.3d 1099, cert. denied, 311 Conn. 944, 89 A.3d 351 (2014). On February 7, 2014, the petitioner initiated this matter by the filing of his petition for a writ of habeas corpus. The petitioner was assisted at trial by a Spanish language interpreter.

The allegations against the petitioner by victim M.H. include sexual contact by digital penetration on one occasion as well as nonsexual physical abuse. The allegations against the petitioner by Y.H. include repeated penile-vaginal, penile-anal and penile-oral sexual abuse.

## II

### LAW/DISCUSSION

### A

### Civil Matters—Generally
### Standard of Proof

The standard of proof in civil actions, a fair preponderance of the evidence, is "properly defined as the better evidence, the evidence having the greater weight, the more convincing force in your mind." (Internal quotation marks omitted.) *Cross* v. *Huttenlocher*, 185 Conn. 390, 394, 440 A.2d 952 (1981).

### Burden of Proof

While the "plaintiff is entitled to every favorable inference that may be legitimately drawn from the evidence; and a party has the same right to submit a weak case as he has to submit a strong one . . . the plaintiff [must still sustain] his burden of proof on the contested issues of his complaint," and the defendant need not present any evidence to contradict it." (Citations omitted.) *Lukas* v. *New Haven*, 184 Conn. 205, 211, 439 A.2d 949 (1981). The general burden of proof in civil actions is on the plaintiff, who must prove all the essential elements of the cause of action by a fair preponderance of the evidence. *Gulycz* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 523, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1982). Failure to do so results in judgment for the defendant. Id.

## Proceedings

"The [fact-finding] function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of the circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties . . . ." (Internal quotation marks omitted.) *Cavolick* v. *DeSimone*, 88 Conn. App. 638, 646, 870 A.2d 1147, cert. denied, 274 Conn. 906, 876 A.2d 1198 (2005). "It is well established that in cases tried before courts, trial judges are the sole arbiters of the credibility of witnesses and it is they who determine the weight to be given specific testimony. . . . It is the quintessential function of the fact finder to reject or accept certain evidence . . . ." (Internal quotation marks omitted.) *In re Antonio M.*, 56 Conn. App. 534, 540, 744 A.2d 915 (2000). "The sifting and weighing of evidence is peculiarly the function of the trier [of fact]." *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). "[N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded [to] the testimony." (Internal quotation marks omitted.) *Toffolon* v. *Avon*, 173 Conn. 525, 530, 378 A.2d 580 (1977). "The trier is free to accept or reject, in whole or in part, the testimony offered by either party." *Smith* v. *Smith*, supra, 123. "The determination of credibility is a function of the trial court." *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 333, 764 A.2d 199 (2001).

## Credibility

It is well established that "[i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 155, 920 A.2d 236 (2007); see also *Dadio* v. *Dadio*, 123 Conn. 88, 92–93, 192 A. 557 (1937). Such observation may include all genuine and spontaneous reactions of the witness in the courtroom, whether or not on the witness stand, but only to the extent that they bear on the witness' credibility. *State* v. *McLaughlin*, 126 Conn. 257, 264–65, 10 A.2d 758 (1939). It is generally inappropriate for the trier of fact to assess the witness' credibility without having watched the witness testify under oath. *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 111, 890 A.2d 104 (2006).

## B

### Habeas Corpus Matters

"The right to petition for a writ of habeas corpus is enshrined in both the United States constitution and the Connecticut constitution. See U.S. Const., art. I, § 9; Conn. Const., art. I, § 12. Indeed, it has been observed that the writ of habeas corpus holds an honored position in our jurisprudence. . . . The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . The writ has been described as a unique and extraordinary legal remedy. . . . It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." (Citations omitted; internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 147 Conn. App. 136, 142–43, 81 A.3d 1209 (2013).

"A criminal defendant's right to the effective assistance of counsel . . . is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Citations omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). The petitioner has the burden to establish that "(1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008), citing *Strickland* v. *Washington*, supra, 694. "A reasonable probability is one which is sufficient to undermine confidence in the result." (Internal quotation marks omitted.) *Vasquez* v. *Commissioner of Correction*, 111 Conn. App. 282, 286, 959 A.2d 10, cert. denied, 289 Conn. 958, 961 A.2d 424 (2008).

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006), quoting *Strickland* v. *Washington*, supra, 466 U.S. 687. It is not enough for the petitioner to simply prove the underlying facts that show that his attorney failed to take a certain action.

Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the "counsel" guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial. *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 845–46, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008).

Under the second prong of the test, the prejudice prong, the petitioner must show that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 101, 52 A.3d 655 (2012).

When assessing trial counsel's performance, the habeas court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689. The United States Supreme Court explained: "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citation omitted; internal quotation marks omitted.) Id.

"In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Martin* v. *Commissioner of Correction*, 155 Conn. App. 223, 227, 108 A.3d 1174, cert. denied, 316 Conn. 910, 111 A.3d 885 (2015).

Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* v. *Washington*,

supra, 466 U.S. 686.

#### Evidence and Examination of Witnesses

"An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Similarly, "the presentation of testimonial evidence is a matter of trial strategy . . . ." (Citation omitted; internal quotation marks omitted.) *Bowens* v. *Commissioner of Correction*, 104 Conn. App. 738, 744, 936 A.2d 653 (2007), cert. denied, 286 Conn. 905, 944 A.2d 978 (2008).

"The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." *Velasco* v. *Commissioner of Correction*, supra, 119 Conn. App. 172.

#### Pretrial Investigation

"The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when [s]he was conducting it. . . . The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." (Citations omitted; internal quotation marks omitted.) *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 858–59, 33 A.3d 819, cert. denied, 303 Conn. 936, 36 A.3d 695 (2012).

#### Retaining an Expert

The Appellate Court has recently reiterated "that there is no per se rule that requires a trial attorney to seek out an expert witness." *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 811, 40 A.3d 796, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). "In *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008), however, [the Appellate Court] noted that in some cases, 'the failure to use any expert can result in a determination that a criminal defendant was denied the effective assistance of counsel.' Id., 76." *Stephen S.* v. *Commissioner of Correction*, supra, 811. However, the decision not to call any witness, including an expert witness, "does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 481, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009); see also *Harris* v. *Commissioner of Correction*, 134 Conn. App. 44, 57–58, 37 A.3d 802 (failure to call expert regarding a child's competency to testify not error where no evidence expert testimony would have weakened the child's testimony), cert. denied, 304

Conn. 919, 41 A.3d 306 (2012).

1

### Attorney Tashun Bowden-Lewis

Attorney Bowden-Lewis testified to her training and experience as a criminal defense attorney in the state of Connecticut, including her continuing annual and semiannual training in defending against criminal sexual abuse allegations. Specifically, counsel testified to "many different trainings" at the Office of the Public Defender, including protocols, forensic interviews and expert witnesses. She further testified to prior representation of defendants accused of similar offenses with multiple victims. The court found Ms. Bowden-Lewis to be a credible witness, both in terms of her manner of testifying as well as the substance of her testimony and its factual foundation. Counsel testified to having received all discovery in the case, including witness statements. She further testified to utilizing the services of Tony Smith, the public defender's office investigator to perform several tasks, including interviewing potential witnesses Daisy Cruz, Tanya Lombardo and Carlos, Claribel and Dayanara Santos. Underlying counsel also interviewed a number of these witnesses. Counsel testified to unsuccessful attempts to speak with the victims and their mother.

Counsel interviewed Daisy Cruz, who was willing to testify. Ms. Cruz did not believe the allegations of sexual assault; however, she disclosed to underlying counsel that the petitioner sexually assaulted her when she was six years old. Counsel could not recall whether Ms. Cruz told her she overheard Y.H. recant the allegations against the petitioner; however, counsel did testify that she considered Ms. Cruz to be a "crucial" defense witness and told her as much. Despite accurately describing calling Daisy Cruz as a defense witness as "risky," underlying counsel and the petitioner made great efforts to have her testify at trial.

Shortly after the witness interview, Ms. Cruz relocated to Florida. Prior thereto, counsel served Ms. Cruz with a subpoena and asked her to remain in Connecticut to testify at trial. After Ms. Cruz left Connecticut, Attorney Bowden-Lewis testified, she stayed in "constant contact" with the witness through e-mail and had plans to fly Ms. Cruz and her children back to Connecticut so that she could testify.

Counsel testified that Ms. Cruz informed her that a "high-risk pregnancy" prevented her from traveling to Connecticut to testify at trial. Counsel testified to having arranged for the testimony of Ms. Cruz by audiovisual device from Florida and filing a motion to present that testimony with the trial court. The motion was denied.

Counsel testified to reviewing the evidence with the petitioner, including witness statements. She further

testified to viewing the forensic interview of M.H. Counsel discussed with the petitioner additional information regarding M.H., including her sexual activity with a boyfriend. The petitioner had no difficulties understanding counsel during their meetings, even without an interpreter.

Counsel described the theory of defense as "attack[ing] the elements of the crime." In that regard, the defense called as witnesses the petitioner and his wife. Counsel further anticipated cross-examination of the victims. Counsel made the strategic decision, after interviewing them, not to call the petitioner's family members as witnesses as they had "nothing concrete to add" to the defense case. Specifically as to Tanya Lombardo, counsel testified to the strategic decision not to call Tanya Lombardo as a witness, as she had no "relevant" or "material" information to aid the defense case. As to Claribel Santos, counsel testified that she did not call her as a trial witness, as the only information Ms. Santos had to contribute was that she did not believe the allegations. This is not the type of evidence that would be relevant at trial. Counsel recognized that the case would hinge on witness credibility based on the lack of physical evidence.

Attorney Bowden-Lewis testified credibly to having consulted in the past with mental health professionals with an expertise in child sexual abuse issues. Counsel testified that she did not consult an expert in the underlying matter based on her prior trial experience, consultations and familiarity with the prosecution's expert witness, Theresa Montelli, from prior cases. Counsel testified credibly that she reviewed a transcript of the state's expert witness' trial testimony. As to Ms. Montelli, counsel testified credibly to a strategic decision not to object to her "general testimony," as it only applied broadly to the case. She further testified that Ms. Montelli's statistical testimony as to recantation rates comported with her own understanding derived from independent research. As to Donna Meyer, counsel testified that she did not feel that Ms. Meyer's testimony was improper "bolstering" of M.H., otherwise she would have objected. Counsel further testified to familiarity with the protocols of a forensic interview and saw nothing suggestive or coercive in the video interview.

Regarding the entry of the forensic interview into evidence, counsel testified credibly to the strategic decision to allow the entire video into evidence, as M.H., in the video, brought out evidence that she felt would be helpful to the defense, specifically an alternative source of sexual knowledge and actual prior sexual activity with her boyfriend. Counsel testified credibly and realistically that, although she did not want the entire forensic video entered into evidence, there did not exist the option to "pick and choose bits and pieces" of the video to enter into evidence. Counsel testified

to balancing the damaging evidence in the video with the evidence favorable to the defense. The record shows that M.H. had to acknowledge lying to the jury in prior testimony when she was recalled to the witness stand. As to other potential areas of cross-examination of M.H., counsel testified to wanting to cross-examine sexual assault victims on the "root" of the sexual assault case only, and not "frivolous" issues, as challenging a witness on every conceivable inconsistency could diminish the defense case and distract from the larger inconsistencies. Additionally, counsel testified to a strategic decision not to cross-examine M.H. on her hospitalization and suicide attempt, as it is "very risky," and could "elicit sympathy" from the jury. Counsel testified credibly and accurately that a less vigorous, "delicate" examination of child/teen sexual assault victims is often necessary, as it could alienate the jury.

Regarding the petitioner's "work history," counsel testified credibly that the petitioner described to her his work history during the relevant time period as working "under the table" and working "inconsistently." Counsel further testified that, although the petitioner's wife brought her some documents associated with the petitioner's work history, the petitioner provided no documentation to support a claim of consistent, full-time work during the relevant time period. Regardless, counsel testified, that, as the petitioner lived in the home with the victims and the prosecuting authority asserted broad divers dates as to the crimes, it was "tough to pin down" or alibi a time frame to dispute the petitioner's access to the victims. Counsel testified to relying on the petitioner's trial testimony in support of his denials and claimed lack of access due to a busy work schedule.

### 2

### Tanya Lombardo

Ms. Lombardo, the petitioner's niece, testified for the petitioner. Admittedly, Ms. Lombardo testified that when she spoke to underlying counsel in a telephone interview from Georgia, she told counsel that she "didn't really know much" about the case. Though generally credible, she had no independent knowledge about the case and had no information that this court finds would affect the jury's assessment of the elements of the several charges in the two cases or impact the credibility of the prosecution witnesses. For example, she had no information as to the victims' upset after the petitioner moved out of the home and no information, other than simply not believing the allegations, which might persuade a fact finder. Ms. Lombardo testified that she never saw exterior chain locks on the victims' bedroom doors.

### 3

### Jeffrey Cianciolo

Mr. Cianciolo, who owned a painting company, was the petitioner's employer for a number of years, from approximately spring of 2004 or 2005 through 2009. The witness could not quite specify the years of employment, resulting in a three- to five-year employment range. The witness testified that the petitioner worked "full-time" hours with the exception of the "slow" winter months and a "really slow" period in 2007–2008. Mr. Cianciolo, who has a 2010 felony conviction, testified that he has no employment records available for the years 2004–2008. He further testified that he has had no access to the potentially relevant records since 2010. As to the year 2004, Mr. Cianciolo can only say that the petitioner worked for him for approximately four to five years and that he had no recollection of the precise years of the petitioner's employment. The witness brought no documents with him, and the petitioner offered no employment records during the habeas trial. Mr. Cianciolo, as the best witness presented at the habeas trial in support of a defense theory of limited access to the victims, presented loose and unconvincing testimony for the petitioner. The evidence on this subject was not sufficiently bolstered by either Claribel Santos or Tanya Lombardo. This court finds that the petitioner has failed to establish the existence of convincing evidence to disprove consistent and sufficient access to perpetrate these sexual assaults over the course of years.

### 4

### Claribel Santos

Claribel Santos, the petitioner's sister, testified at the habeas trial. She testified to being interviewed by underlying counsel and being told that she would not testify, as her testimony was not especially helpful. Ms. Santos testified that she saw no chain locks on the victims' bedroom doors. Much like Tanya Lombardo, Claribel Santos had no information that this court finds would have been especially probative of either the credibility of the state's witnesses or the elements of the several offenses. Ms. Santos had general information on the petitioner's work schedule, but also potentially harmful information on domestic violence between the victims' mother and the petitioner.

### 5

### Dayanara Santos

The petitioner's wife, Dayanara Santos, testified at the habeas trial. She testified to having contact with underlying counsel throughout the course of the litigation. She testified to providing certain work-related documentation to counsel as well as information about alleged threats to the petitioner from the victims' mother. She also claims to have been made aware of the specific allegations against the petitioner by being present at court appearances and having been provided

with copies of witness statements by the petitioner. She further testified in a somewhat contradictory fashion that she was not made aware of the details of the allegations until after trial. Mrs. Santos failed to provide this court with relevant or probative information as to the claims asserted in the petition.

6

### Petitioner

The petitioner testified at the habeas trial. He testified that there was nothing unusual in his most recent prearrest contacts with the victims or their mother. He testified that, postarrest, he was made aware of the claims against him by reviewing the victims' statements with underlying counsel. He was also made aware of the content of M.H.'s forensic interview, as he was provided a transcript by counsel. The petitioner testified to appropriate preparation, interaction and discussion with Attorney Bowden-Lewis, including reviewing potential trial witnesses.

Unlike Tanya Lombardo and Claribel Santos, the petitioner, who lived in the home, testified that he installed chain locks on the exterior of the victims' bedroom doors, although he testified that he did so on "orders" from the victims' mother. The petitioner testified that the chain locks were on the doors for only two days as part of a pattern of abuse (described by the petitioner as "spankings") visited upon the victims and him by their mother. The petitioner positioned himself as the victims' protector in this regard.

Based on the whole of his habeas trial testimony, the petitioner failed to demonstrate a clear recollection of his criminal trial, including the witnesses and their testimony. The petitioner also clearly lacked a command of the anticipated testimony of potential witnesses, including Daisy Cruz, who he testified would supply the jury with information about the petitioner's "problems" with the victims' mother, as opposed to a recantation by Y.H. More specifically as to Ms. Cruz, the petitioner had no idea how her testimony would assist in the defense against the sexual assault allegations, testifying: "That's a question I ask myself." Oddly, the petitioner acknowledged memory problems, testifying that they arose for the first time during the criminal litigation.

Regarding his work history, the petitioner testified that he worked under the table for Jeffrey Cianciolo. He further acknowledged that there would be no employment records of his undocumented work, with the possible exception of checks, the means by which he was occasionally paid. The petitioner attributed any discrepancy between his habeas trial testimony and the information he reported to the Office of Adult Probation in his presentence investigation to the absence of a Spanish language interpreter at the interview. The peti-

tioner's testimony contradicted that of his former employer when he testified that he was never unemployed for long periods of time. There was nothing in the testimony of the petitioner that called into question the level of legal representation he received from underlying counsel.

## 7

## David Mantell, Ph.D.

Doctor Mantell is a clinical psychologist specializing in child abuse and neglect issues. The doctor testified to his excellent credentials and extensive experience in the area of child abuse and neglect investigations and forensic interviews. The witness was accepted by the court as an expert in the assessment and investigation of child sexual abuse.

The doctor's testimony consisted mainly of a discussion of the reasons children report or fail to report sexual abuse. In sum, although Dr. Mantell's testimony was somewhat interesting, this court finds that in this particular case, it did not add much probative value for the fact finder.

Dr. Mantell testified to having viewed the forensic interview of Donna Meyer. He testified that the interview was "rushed," which, according to the witness, was her usual style. He further testified that Ms. Meyer's interview had a very short "rapport building phase." Although he testified that the interview omitted two phases from the interview that, although they are part of best practices, are not part of the RATAC protocol: conversational rule review and narrative training. The witness testified that the aforementioned steps can be "skipped" with "older witnesses"; there was no clarification as to the age range for "older" witnesses.

The doctor was complimentary of the interview in several respects, testifying that "many" of Ms. Meyer's questions were appropriate and that Ms. Meyer's interview style was also appropriate, described by him as "calm" and "welcoming," showing interest in the witness and asking open-ended questions which invited narrative responses. This court disagrees with the witness' characterizations of Ms. Meyer's questions on the "core issues" relating to the sexual assault as leading or a "forced choice." The court does not find the offer of two opposing possibilities to an interview subject to be leading in that it does not suggest an answer. On the other hand, this court does question an interview style that might actively and directly suggest that an interview subject might be "wrong" about a response, if he or she is "really sure" about a response or if he or she has a "grudge" against the claimed abuser.

To the extent this court agrees with the witness that a "positive duty" of forensic interviewers exists to explore possible alternative explanations for the sexual abuse allegations, including an inquiry as to whether

the subject has not disclosed all sexual touching, clarifying the accuracy of the material provided and exploring other potential sources of the subject's sexual knowledge, Dr. Mantell testified that Ms. Meyer "seemed to consider" that M.H. may have been seeking to divert attention from her sexual behavior with her boyfriend.

As to the testimony of Theresa Montelli, Dr. Mantell's testimony of the various motives for children to both report abuse when it did not occur and deny abuse when it did occur may have been as harmful as it was helpful to the defense. This court finds noteworthy and probative of the credibility of this witness the extent to which he was willing to engage in speculation and surmise on direct examination, while refusing to speculate and insisting that an issue be "well investigated" before he could offer a response on cross-examination. "Mere conjecture and speculation are not enough to support a showing of prejudice." (Internal quotation marks omitted.) *Hamlin* v. *Commissioner of Correction*, 113 Conn. App. 586, 596, 967 A.2d 525, cert. denied, 291 Conn. 917, 970 A.2d 728 (2009). An expert's opinion may not be based on surmise or conjecture. *State* v. *Nunes*, 260 Conn. 649, 672–74, 800 A.2d 1160 (2002). Finally, his description and explanation of the data relating to percentages of false allegations and recantation rates, if allowed to come before the jury, could easily have been turned to the prosecuting authority's advantage.

Taken as a whole and placed in the context of the entirety of the evidence adduced at the habeas trial, this court finds that the petitioner has failed to establish the constitutionally deficient performance of underlying counsel in not consulting with a mental health expert. Additionally, this court does not find deficient performance surrounding the testimony of Theresa Montelli or Donna Meyer. Even if the response provided to a question is damaging to the defense, the court must assess the performance of counsel as a whole. The in-trial decision of a criminal defense attorney cross-examining a witness to ask or not ask one particular question should be subject to analysis in the habeas context only in the rarest of circumstances. *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 132, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). Accordingly, these claims fail.

8

### Attorney Kenneth Simon

Ken Simon, an extremely well-qualified and experienced criminal defense attorney, testified as an expert in criminal defense for the petitioner. He testified to extensive experience in the litigation of child sexual abuse cases. Although Attorney Simon had some quibbles with certain areas of the representation of underlying counsel and was very "troubled" by one question

in particular, it is the duty of this court to assess the level of representation as a whole. Taking counsel's representation as a whole, this court does not find it constitutionally deficient. This court also finds it troubling and probative of the lack of foundation for the opinion of the witness that he was not supplied with the entire transcript of the habeas trial testimony of Claribel Santos during the preparation for his testimony. His opinion on the impact of her testimony, therefore, is not fully informed. Cf. *State* v. *John*, 210 Conn. 652, 677, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989).

During closing arguments, the petitioner withdrew several claims: C, E, F, J, K and M of the amended petition. The court will only note, therefore, that having considered the merits of those claims in the preparation of this decision, the court finds that the petitioner has failed to establish both deficient performance and prejudice. As these claims have been withdrawn, no further explication from this court is necessary. As to the portion of claim L that references the failure to call Carlos Santos, Mr. Santos having failed to testify in this matter and there being insufficient evidence to discern what he would have added to the criminal defense case, this claim fails.

Regarding the cross-examination of the victims in this case, the court does not find deficient performance. The petitioner has failed to demonstrate the reasonable probability that doing so would have resulted in a more favorable outcome, rather than alienating the jury by evoking additional sympathy for the complainants. "[C]ross-examination is a sharp two-edged sword and more criminal cases are won by not cross-examining adverse witnesses, or by a very selective and limited cross-examination of such witnesses, than are ever won by demolishing a witness on cross-examination." (Internal quotation marks omitted.) *State* v. *Clark*, 170 Conn. 273, 287–88, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). As to M.H., counsel's examination and strategic decision not to object to the entry of the forensic video resulted in the jury being made aware of the untruthfulness of some of her testimony as well as her sexual activity.

Counsel's strategic decision not to challenge the victim's testimony on every potential inconsistency on cross-examination is a sound one. "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, supra, 119 Conn. App. 172. It can be considered a valid strategy in the context of this case not to prolong the testimony of potentially sympathetic witnesses with lengthier cross-examination when counsel has determined that there is little to be gained from

additional questioning. There is insufficient probative or persuasive evidence of motive, interest or bias against the petitioner by the victims, other than that properly occasioned by being sexually assaulted.

Additionally, as to O.S., the mother of the victims, the petitioner has failed to demonstrate both deficient performance and prejudice. The petitioner has failed to adduce credible evidence of bias, motive or interest against the petitioner, other than that occasioned by being the mother of two children sexually and physically abused by him, especially in the context of the long delay between the separation and disclosures. The petitioner presented contradictory and equivocal evidence as to the collateral issue of O.S.'s work history. Further, this court does not find that the potentially devastating evidence of painting the petitioner as a hard-drinking philanderer who does not meet his child support obligations in an effort to manufacture a defense of animosity would have been helpful to the defense. Finally, the evidence makes clear that the petitioner had sufficient access to the victims to commit these offenses several times over. Accordingly, these claims fail.

### III

### CONCLUSION

Based upon a review of the entire record, this court finds that the petitioner has failed to demonstrate constitutional deficiencies in the investigation, preparation and trial of the underlying matter. It is not the case that every criminal conviction is due to ineffective legal representation. The petitioner has also failed to demonstrate counsel's deficiencies in the examination of the several named witnesses. The petitioner has failed to demonstrate a reasonable probability that inquiry of those witnesses into areas not covered during the underlying evidentiary proceedings would have yielded a different, more favorable, result for him. "Mere conjecture and speculation are not enough to support a showing of prejudice." (Internal quotation marks omitted.) *Hamlin* v. *Commissioner of Correction*, supra, 113 Conn. App. 596. Additionally, the petitioner has failed to demonstrate both deficient performance and prejudice by the absence of the listed potential defense witnesses. The petitioner has also failed to establish the need for counsel to retain, consult with, or retain a mental health professional as part of trial preparation. There has been no showing as to what additional benefit would have been derived from such efforts.

Considering the foregoing, the court finds that the petitioner has failed to rebut the presumption of competence in the circumstances of this case. The court denies the petition for a writ of habeas corpus. Judgment shall enter for the respondent.

* Affirmed. *Santos* v. *Commissioner of Correction*, 186 Conn. App.   ,   A.3d   (2018).