******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

STATE OF CONNECTICUT *v.*
WAYNE S. BRADBURY
(AC 41544)

Alvord, Prescott and Bright, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of criminal possession of a firearm and carrying a pistol without a permit in connection with the shooting of the victim, the defendant appealed to this court. The jury found the defendant not guilty of the crimes of assault in the first degree and criminal attempt to commit robbery in the first degree, and the defendant claimed that, in light of the jury's not guilty finding on those charges, there was insufficient evidence to support his conviction as demonstrated by the inconsistency of the jury's verdict. *Held* that the defendant could not prevail on his claim that there was insufficient evidence to support his conviction, as his attempt to obtain review of the legal inconsistency between a conviction and an acquittal by recasting it as a claim of evidentiary insufficiency did not change the nature of his claim, and this court considered only whether the state presented sufficient evidence to support the defendant's conviction: the victim testified that he saw the defendant with a gun in his hand and that, immediately thereafter, he heard a gunshot and realized he had been shot, the defendant stipulated to the fact that he did not have a gun permit and that he was a convicted felon, and the defendant conceded that, if the jury believed the victim's testimony, there was sufficient evidence to convict him of the charges he challenged on appeal; moreover, the defendant's argument that the jury's not guilty verdict on the assault and robbery charges meant that the jury necessarily rejected the victim's testimony in its entirety was unavailing under long-standing case law.

Argued January 16—officially released March 17, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the first degree, criminal attempt to commit robbery in the first degree, criminal possession of a firearm and carrying a pistol without a permit, brought to the Superior Court in the judicial district of New Haven, and tried to the jury before *Blue, J.*; verdict and judgment of guilty of criminal possession of a firearm and carrying a pistol without a permit, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John P. Doyle, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Wayne S. Bradbury, appeals from the judgment of conviction, rendered following the jury's guilty verdict, of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[1] The defendant claims that, in light of the jury's not guilty finding on the remaining charges, there was insufficient evidence to support his conviction. We affirm the judgment of the trial court.

The state presented the following relevant evidence to the jury. On May 5, 2016, Zachary Ourfalian contacted the defendant to arrange to purchase $1500 worth of marijuana from him. Ourfalian previously had purchased marijuana from the defendant. They arranged to meet at the Home Depot in Wallingford. Ourfalian knew that the defendant would be driving a white BMW automobile. Prior to the meeting, Ourfalian picked up his friend, Leo Spencer, to take the ride with him, as he drove his mother's white Infinity FX 35. Ourfalian did not have a weapon with him, and he had never possessed a firearm. As Ourfalian was driving to meet the defendant, the defendant contacted him and changed the location of the meeting to Connecticut Beverage Mart (Mart), located across the street from the Home Depot in Wallingford. When Ourfalian and Spencer arrived at the Mart, Ourfalian saw the defendant waiting in a white BMW, which was parked on the side of the building, in the shadows. At approximately 8:45 p.m., Ourfalian parked in front of the Mart and walked around to the side of the building where the defendant had backed his BMW into a parking space. Ourfalian had $1500 tucked into his waistband of his pants.

The defendant was standing outside of the vehicle, which may have been running, with the passenger side door open. Another man was seated in the driver's seat. The defendant told Ourfalian that the marijuana was in a shoe box in the front of the car. Ourfalian felt uncomfortable about this because it would require him to reach into the car with his back to the defendant, so he looked around to investigate. The defendant then told him to hand over his money. Ourfalian saw a gun in the defendant's hand, and, as he started to turn and run, he heard a gunshot. When he returned to his vehicle, the $1500 was no longer in his waistband, and he realized that he had been shot. Ourfalian told Spencer that he needed to drive and Ourfalian got into the passenger's seat, and Spencer drove away from the Mart.

Ourfalian started looking on his cell phone for the addresses of local hospitals, but he was getting information on other types of medical facilities and could not narrow his search. He had Spencer drive to one of the

locations, but it was not a hospital, so they asked a security guard in the area for directions to a hospital. After attempting to follow those directions, they pulled into the entrance of an elementary school, Cook Hill School, and Ourfalian called his girlfriend and 911. Before emergency responders arrived, Ourfalian deleted from his cell phone some of the messages between him and the defendant regarding the marijuana purchase.

At approximately 9 p.m., Anthony Baur, an officer with the Wallingford Police Department, received a report via his police radio about a shooting in the Cook Hill School area. When he arrived, other officers already were on scene at the school, speaking with two individuals, who had exited a white Infinity automobile.[2] Baur went to assist the other officers, and he asked Ourfalian to raise his arms so that he could be frisked for weapons. Baur then saw that Ourfalian had been shot in the abdomen, and he relayed their exact location to paramedics. Ourfalian appeared pale and in shock. Spencer, who was not being cooperative, was placed in handcuffs and put in the backseat of a police cruiser.

Baur rode with Ourfalian in the ambulance to Yale New Haven Hospital (hospital), where Ourfalian was taken into surgery. Meanwhile, other officers went to the Mart, where they found a .45 caliber shell casing, Ourfalian's hat, and Ourfalian's earbuds, but no weapons or money. The next day, Baur and Detective Shawn Fairbrother went to the hospital to interview Ourfalian and to present to him a photographic array. Ourfalian identified the photograph of the defendant, and stated that he was the person who had shot him.

On May 9, 2016, the police arrested the defendant, and he was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[3] criminal attempt to commit robbery in the first degree in violation of § 53a-134 (a) (2),[4] criminal possession of a firearm, and carrying a pistol without a permit. During trial, the defendant, who admitted to being a convicted felon, testified that it was Ourfalian who pulled a gun on him, and that when he pushed Ourfalian's gun away, he heard it go off.[5] Following the trial, the jury found the defendant guilty of criminal possession of a firearm and carrying a pistol without a permit; it found him not guilty of the remaining charges. The court accepted the jury's verdict and rendered a judgment of conviction, sentencing the defendant to a total effective sentence of ten years imprisonment, execution suspended after six years, with three years probation. This appeal followed.

On appeal, the defendant claims that there was insufficient evidence to support his conviction as demonstrated by the inconsistency of the jury's verdict, wherein the jury "credited nonexisting evidence in finding the defendant guilty of [the] firearms charges . . . ."[6] He argues: "Based on the evidence introduced

at trial, there was only one way the defendant could have been guilty of assault or attempted robbery: If the jury believed that the defendant held the firearm, pointed it at Ourfalian, demanded his money, and then fired. The jury simply did not believe that version of events because they acquitted the defendant of the assault and attempted robbery charges. Put simply, they did not credit the evidence that the defendant was holding the weapon to complete the assault and attempt the robbery." We conclude that the evidence was sufficient.

"In reviewing a sufficiency of the evidence claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Daniel B.*, 331 Conn. 1, 12, 201 A.3d 989 (2019).

This "inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Jackson* v. *Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard . . . does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the [fact finder]—if known." Id., 319–20 n.13; see also *State* v. *Arroyo*, 292 Conn. 558, 586, 973 A.2d 1254 (2009) ("claims of legal inconsistency between a conviction and an acquittal are not reviewable"), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010).

In the present case, the defendant does not actually challenge whether the state introduced sufficient evidence to support each element of the crimes of which the jury found him guilty but, rather, his challenge is to the consistency of the verdict because, in his view, it was obvious that the jury did not credit certain evidence, having found him not guilty of assault and robbery.[7] The defendant's attempt to obtain review of the legal inconsistency between a conviction and an acquit-

tal by recasting it as a claim of evidentiary insufficiency, although artful, does not change the nature of his claim. See *State* v. *Arroyo*, supra, 292 Conn. 583–86 (discussing whether claims of legal inconsistency between conviction and acquittal are reviewable). Accordingly, we will consider only whether the state presented sufficient evidence to support the defendant's conviction. See *State* v. *Blaine*, 168 Conn. App. 505, 512, 147 A.3d 1044 (2016) (explaining that prior case law has "resolved any prior uncertainty in the law by holding that courts reviewing claims of inconsistent verdicts should examine only whether the evidence provided sufficient support for the conviction, and not whether the conviction could be squared with verdicts on other counts"), aff'd, 334 Conn. 298, 221 A.3d 798 (2019).

Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit . . . ." "[T]o obtain a conviction for carrying a pistol without a permit, the state was required to prove beyond a reasonable doubt that the defendant (1) carried a pistol, (2) for which he lacked a permit, (3) while outside his dwelling house or place of business." (Internal quotation marks omitted.) *State* v. *Covington*, 184 Conn. App. 332, 339, 194 A.3d 1224, cert. granted, 330 Conn. 933, 195 A.3d 383 (2018). "[T]o establish that a defendant carried a pistol or revolver, the state must prove beyond a reasonable doubt that he bore a pistol or revolver upon his person . . . while exercising control or dominion of it." (Internal quotation marks omitted.) Id.

Section 53a-217 provides in relevant part: "(a) A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of a felony . . . ." In the present case, for the state to obtain a conviction for criminal possession of a firearm, the state was required to prove that the defendant possessed a firearm and that he was a convicted felon at the time of possession. See General Statutes § 53a-217 (a) (1). A "[f]irearm" is defined as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." General Statutes § 53a-3 (19).

Ourfalian testified that he saw the defendant with a gun in his hand and that, immediately thereafter, he heard a gunshot, and realized, as he ran back to his vehicle, that he had been shot in the abdomen. The defendant stipulated to the fact that he did not have a gun permit and that he was a convicted felon, and, additionally, in his trial testimony, he also admitted that he was a convicted felon. The defendant concedes that if the jury believed Ourfalian's testimony, there was sufficient evidence to convict him of the gun charges

he challenges on appeal. His argument that the jury's not guilty verdict on the assault and robbery charges means that we must conclude that the jury necessarily rejected Ourfalian's testimony in its entirety simply is unavailing under our long-standing case law. See, e.g., *State* v. *Kaplan*, 72 Conn. 635, 637–38, 45 A. 1018 (1900) ("The counsel for the [defendant] has apparently been misled by the erroneous belief that the jury could not lawfully accept as true the testimony of the state's witness . . . so far as it tended to prove [one or more facts], and reject other portions of his testimony as untrue or unreliable. Such discrimination is within the power of the jury in respect to every witness . . . ."); *Santos* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-14-4005961-S (April 5, 2017) (reprinted at 186 Conn. App. 107, 115–16, 198 A.3d 698) ("[N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded [to] the testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Citation omitted; internal quotation marks omitted.)), aff'd, 186 Conn. App. 107, 198 A.3d 698, cert. denied, 330 Conn. 955, 197 A.3d 893 (2018).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant not guilty of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (2), and the court rendered a judgment of acquittal on those charges.

[2] The vehicle and the surrounding area were searched by the police, who discovered no firearms, ammunition, or drugs.

[3] General Statutes § 53a-59 provides in relevant part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[4] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery . . . he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[5] The defendant stipulated to being a convicted felon and to not having a permit.

[6] Although the defendant did not preserve this claim, "we have held that an unpreserved claim of evidentiary insufficiency is reviewable because it is of constitutional magnitude. [A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)]. There being no practical significance, therefore, for engaging in a *Golding* analysis of an insufficiency of the evidence claim, we will review the defendant's challenge to his conviction . . . as we do any properly preserved claim." (Internal quotation marks omitted.) *State* v. *Nova*, 161 Conn. App. 708, 717 n.6, 129 A.3d 146 (2015).

[7] We also disagree with the premise of the defendant's argument that the jury's split verdict necessarily means that the verdict is inconsistent. The jury logically could have concluded that, although the state proved beyond a reasonable doubt that the defendant was in possession of the gun, it failed to prove that the defendant possessed the requisite intents to commit the crimes of assault in the first degree and attempt to commit robbery in the first degree. It is because of such possibilities that challenges to the consistencies of verdicts are not permitted.